UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MELISSA R. MARTIN

VERSUS

WINN-DIXIE LOUISIANA, INC.,
WHICH UPON INFORMATION AND
BELIEF MERGED WITH WINN-DIXIE
MONGOMERY, LLC

CIVIL ACTION

NO: 3:13-CV-00682-JWD-SCR

## ORDER

Before the Court is a Motion for Partial Dismissal filed by Defendant Winn-Dixie. (Doc. 17.) Defendant moves to dismiss any claims in Plaintiff's Complaint or Supplemental Complaint related to her discharge because, Defendant argues, she has failed to administratively exhaust any such claim under federal or state law. (Doc. 17, p. 1.) Plaintiff opposes this Motion. (Doc. 21.) Defendant has filed a Reply Memorandum addressing the issues raised by Plaintiff's Opposition. (Doc. 24.) No oral argument is necessary.

Considering the law and facts pled, the Court grants Defendant's Motion to Dismiss. (Doc. 17.)

I.  **Background**

Plaintiff Melissa Martin filed this suit under the Civil Rights Act of 1964 Title VII, 42 U.S.C. 2000e, et seq., ("Title VII") and Louisiana Employment Discrimination Law ("LEDL"), alleging that Defendants, Winn Dixie Montgomery, LLC ("Winn Dixie") harassed, discriminated against, retaliated against, and wrongfully terminated Plaintiff because she was pregnant. (Doc 1-1, p. 2.)

Plaintiff was hired by Defendant as a cashier on December 15, 1995, and was later promoted to Co-Director. (Doc 1-1, p. 2.) On September 4, 2012, Plaintiff discovered she was pregnant. (Doc 1-1, p. 2.) Almost immediately thereafter, Plaintiff informed Defendant, through its Store Director Chuck Sutton, of her pregnancy. (Doc 1-1, p. 2.) On October 5, 2012, Plaintiff presented to Winn-Dixie a written request from her doctor for accommodation stating that due to her pregnancy, she must not lift more than ten pounds nor work longer than 8 hour shifts. (Doc 1-1, p. 2-3.) Later that day, Defendant, through Sutton, conducted an unfavorable performance evaluation and therein advised Plaintiff that she would need to step down from her full-time position and take a part-time position. (Doc. 1-1, p. 3.) Plaintiff alleges that she was advised by Sutton that Defendant's Human Resources Department had "decided that under the doctor's restrictions" it was best for Plaintiff to take a leave of absence. (Doc. 1-1, p. 3.) Plaintiff was advised that she could take FMLA leave for twelve weeks, at the end of which she could apply for her leave to be extended. (Doc. 1-1, p. 3.)

After some negotiation, Defendant gave Plaintiff the option to take a part-time cashier position. (Doc. 1-1, p. 4.) Plaintiff alleges that taking this position would cause her to lose her full-time status with no guarantee that her Co-Director position would be returned to her at the end of her twelve-week FMLA leave. (Doc. 1-1, p. 4.) Because she did not accept the part-time cashier position, Plaintiff was placed on FMLA leave on January 9, 2013. (Doc. 1-1, p. 4.) At this time, Defendant began advertising an available Co-Director position in an effort to find a replacement for Plaintiff. (Doc. 1-1, p. 4.)

Plaintiff gave birth on March 31, 2013, approximately eleven and a half weeks after her twelve week FMLA leave had begun. (Doc. 1-1, p. 2.) Whether Plaintiff ever sought to extend her FMLA leave is unclear.

Plaintiff alleges that on May 4, 2013, she contacted Defendant regarding her return to work. (Doc. 1-1, p. 4.) On May 6, 2013 Defendant informed Plaintiff that after she received clearance to return to work with no restrictions, she would need to apply for an open position. (Doc. 1-1, p. 4.) On May 7, 2013, Plaintiff contacted Defendant to request information regarding her employment status after discovering her in-store discount was not working. (Doc 1-1, p. 2.) On May 8, 2013, Plaintiff was informed that she had been fired. (Doc 1-1, p. 2.)

Plaintiff's complaint states that she timely filed charges with the Equal Employment Opportunity Commission ("EEOC") and Louisiana Commission on Human Rights ("LCHR") on January 16, 2014. (Doc 1-1, p. 5.) However, the EEOC Charge itself clearly states that she filed charges on April 21, 2013. (Doc. 17-2.) In her EEOC Charge, Plaintiff stated she was denied a reasonable accommodation by Defendant's Store Director Chuck Sutton on October 5, 2012. (Doc. 17-2.) The denial was confirmed in writing on October 26, 2012. (Doc. 17-2.) Plaintiff indicated by checking the appropriate boxes on the EEOC Charge form that the basis of her discrimination was sex and retaliation, that the discrimination took place between October 15 and 30, 2012, and that the discrimination was not ongoing. (Doc. 17-2.)

On September 24, 2013, Plaintiff filed this suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, alleging claims of discrimination, wrongful termination, emotional distress, mental anguish, and violations of Title VII and LEDL. (Doc. 1-1, p. 5.) On October 16, 2013, Defendant removed this suit pursuant to 28 U.S.C. § 1441 and § 1446 to the United States District Court for the Middle District of Louisiana alleging federal question under jurisdiction 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. (Doc. 1-1, p. 1.)

On November 11, 2013, Plaintiff filed a Supplemental and Amending Petition in which she specified that she had received a Notice of Right to Sue letter from EEOC on November 5, 2013. (Doc. 12, p. 1.)

On June 6, 2014, Defendant filed a Motion for Partial Dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure arguing that Plaintiff failed to exhaust her federal and state administrative remedies and that no cause of action for retaliation exists under the LEDL. (Doc. 17, p. 1.) On June 30, 2014, Plaintiff filed a Motion in Opposition to Defendant's Motion for Partial Dismissal. (Doc. 21, p. 1.) On July 15, 2014, Defendant filed a Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Dismissal. (Doc. 24.)

## II.     Arguments of Parties

Defendant argues first that Plaintiff failed to administratively exhaust Title VII claim for wrongful termination. (Doc. 17-1, p. 5.) The thrust of Defendant's argument is that Plaintiff failed to mention and allege in her EEOC charge that her discharge was wrongful. (Doc. 17-1, p. 5.) Defendant argues that since Plaintiff alleges only retaliation and discrimination in her EEOC charge, she may proceed in Court only with respect to those charges, and is barred as a matter of law from bringing her claims for wrongful termination. (Doc. 17-1, p. 5.) Defendant highlights that plaintiff failed to amend or file an additional EEOC Charge once she was made aware of her termination. (Doc. 24, p. 1-2.)

Plaintiff's response to the above argument is that although she did not allege wrongful discharge in her EEOC complaint, her wrongful discharge claim is "like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the commission." (Doc. 21, p. 4, citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d

455, 466 (5th Cir. 1970).) Plaintiff further responds that since her termination occurred within the purview and temporal period of the investigation, amending or supplementing her EEOC Charge is not required by law. (Doc. 21, p. 5.)

Defendant also argues that Plaintiff's state law claims should be dismissed. (Doc. 17-1, p. 7.) Defendant bases this argument on the fact that Plaintiff did not provide Defendant with notice of her state law discrimination claims prior to filing her lawsuit. (Doc. 17-1, p. 7.) Defendant further argues that Plaintiff's retaliation claim under LEDL should be dismissed as a matter of law, arguing that the statute does not provide a cause of action for retaliation. (Doc. 17-1, p. 8.)

Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Dismissal does not address Defendant's argument regarding the dismissal of the state law claims.

### III. Standard of Review

In *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), the Supreme Court explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'

*Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).)

Interpreting Rule 8(a) and *Twombly,* the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir.2009) (quoting Twombly, 127 S.Ct. at 1965) (emphasis added).

Later, in *In re Great Lakes Dredge & Dock Co. LLC.,* 624 F.3d 201, 210 (5th Cir.2010), the Fifth Circuit explained:

> To avoid dismissal [under Fed.R.Civ.P. 12(b)(6) ], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. [*Doe v. Myspace,* 528 F.3d 413, 418 (5th Cir.2008) ] (citing [*Hughes v. Tobacco Inst., Inc.,* 278, 278 F.3d 417, 420 (5th Cir.2001) ] ). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal,* 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

\*3 *Id.* at 215.

Analyzing the above case law, our brother in the Western District stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.,* No. 10–177, 2011 WL 938785, at \*3 (W.D.La. Feb.9, 2011) (citation omitted).

Afterward, in *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787 (5th Cir.2011), the Fifth Circuit explained:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

*Id.* at 796 (internal citations omitted).

Finally, in *Thompson v. City of Waco, Texas,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.
*4 *Id.* at 502–503 (internal citations and quotations omitted).

A 12(b)(1) motion to dismiss is analyzed under the same rubric as a 12(b)(6) motion to dismiss. The Court must accept all well pleaded facts in the Complaint as true and view them in the light most favorable to the plaintiff. While a 12(b)(6) motion is determined solely on the face of the pleadings, for purposes of a 12(b)(1) motion, the Court may look at evidence in the record. *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 238 (5th Cir.2009)(quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 441 (5th Cir.2008)). A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears that the plaintiff "cannot prove any set of facts" in support of the plaintiff's claims to relief. *Wagstaff v. United States Department of Education,* 509 F.3d 661, 663 (5th Cir.2007). In ascertaining the likelihood of whether the plaintiff can "prove any set of facts" in support of his/her claims for relief, the Court may evaluate the Complaint, supplemented by undisputed facts, and the Court's resolution of disputed facts. *Ramming v. U.S.,* 281 F.3d 158, 161 (5th Cir.2001)("Lack of subject matter may

be found in any of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Furthermore, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

   **IV.   Analysis**

   *a. Failure to Exhaust Administrative Remedies Claim*

Defendant first argues that Plaintiff has failed to exhaust her administrative remedies with respect to her apparent wrongful discharge claim.

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c) permits most employees to seek relief from proscribed discriminatory employment practices in Federal District Court. 42 U.S.C. § 2000e-16(c). As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006).

In *Pacheco,* the Fifth Circuit explained the Title VII exhaustion requirement:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement

given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Id.* at 788-789 (internal citations omitted.)

As this Court explained:

The Fifth Circuit went on to say [in *Pacheco*] that it does "not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Nor does it "require, for purposes of exhaustion, that a plaintiff allege a prima facie case before the EEOC." "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."

*Jeavons*, 2014 WL 897425, slip op. at *2 (quoting *Pacheco*, 448 F.3d at 788-789).

The inquiry then turns to whether Plaintiff exhausted her administrative remedies for each of the issues listed in her Complaint and Amended Complaint. Defendant argues only that Plaintiff failed to exhaust her administrative remedies as to her wrongful discharge claim, and makes no such claim as to her discrimination and retaliation claims. (Doc. 17-1, p. 4-9.)

It is uncontested that Plaintiff's initial EEOC charge contained no mention of her discharge; she had not yet been fired. (Doc. 1-1, p. 4; Doc. 17-2, p. 1.) It is Plaintiff's contention that her discharge was "like or related to allegations contained in the [EEOC] charge and [grew] out of such allegation during the pendency of the case before the commission," and thus, that no amendment to or additional EEOC charge was required to exhaust her administrative remedies. (Doc. 21, p. 4, citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).) The proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against him. *Manning v. Chevron Chem. Co.,* 322 F.3d 874, 878 (5th Cir. 2003).

In response, Defendant rightly cites to the factually similar case *Simmons-Myers v. Caesars Entm't Corp.,* 515 F. App'x 269, (5th Cir. 2013). In that case, the plaintiff filed an

EEOC charge alleging that her employer, Harrah's, had discriminated against her based on her sex. *Id.* at 271. After her charge was filed, but before receiving a right to sue letter, Simmons-Myers was terminated. *Id.* at 272. After her termination, she requested a right to sue letter from the EEOC, but never informed the EEOC she had been terminated, never amended her initial EEOC charge, nor filed an additional EEOC charge. *Id.* In her judicial complaint, Simmons-Myers alleged discrimination based on race and sex and retaliation, all pursuant to Title VII of the Civil Rights act of 1964. *Id.* at 272. The court held that "her termination was a separate employment event for which Simmons-Myers's was required to file a supplemental claim, or at the very least, amend her original EEOC charge." *Id.* citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Moreover, the court noted that "[a]lthough *Simmons–Myers* made allegations of gender discrimination for acts prior to her termination in her EEOC charge, discrete discriminatory acts are not entitled to the shelter of the continuing violation doctrine." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 273 (5th Cir.) *cert. denied,* 134 S. Ct. 117, 187 L. Ed. 2d 36 (2013)

In the instant case, Plaintiff filed an EEOC charge alleging that Defendant had discriminated and retaliated against her based on her gender. (Doc. 17-2, p. 1.) After the EEOC charge was filed, but before receiving a right to sue letter, Plaintiff was terminated. (Doc. 1-1, p. 4.) Plaintiff never informed the EEOC she had been terminated, never amended her initial EEOC charge, and never filed an additional EEOC charge. In her Complaint, Plaintiff alleged discrimination based on her gender, retaliation, and wrongful discharge. (Doc. 1-1, p. 4.)

Given the factual similarities of this case with *Simmons-Myers*, this Court holds that the factual allegations contained within the EEOC charge were insufficient to put Defendant on notice of a wrongful termination claim. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 878 (5th

Cir. 2003). Plaintiff's wrongful termination charge is thus dismissed without prejudice. S*immons-Myers v. Caesars Entm't Corp.,* 515 F. App'x 269, (5th Cir. 2013); *Galarza v. Ochsner Health Sys., Inc*., No. CIV.A. 12-722-JJB, 2014 WL 1431708, at *8 (M.D. La. Apr. 14, 2014).

  *b. LEDL Claims*

 Defendant next argues that Plaintiff's wrongful discharge claim under LEDL should be dismissed. La. Rev. Stat. § 2303. "Under Louisiana law, in order to file a claim for employment discrimination, the plaintiff must give written notice of his intent to file the claim at least thirty days before doing so." *Drummer v. Parent*, 2010 U.S. Dist. Lexis 123720, at *(M.D. La. Nov. 22, 2010) (citing La. Rev. Stat. § 23:303(c)). While, "the filing of an EEOC charge of discrimination satisfies the notice requirement, [it] limits the state claim to the alleged discrimination detailed in the EEOC charge[.]" *Jeavons v. Exxon Mobil Corp.* 2014 U.S. Dist. Lexis 28551, at *8-*9 (M.D. La. Feb. 28, 2014) (*quoting Johnson v. Hospital Corp. of Am.*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011)). As established *supra*, Plaintiff failed to properly assert wrongful discharge claim within her EEOC charge. Thus, Plaintiff's LEDL wrongful discharge claim is similarly barred. Plaintiff's LEDL wrongful discharge claim is thus dismissed without prejudice.

 Defendant argues that Plaintiff is further barred from asserting retaliation under LEDL. Defendant points to *Smith v. Parish of Washington,* 318 F.Supp.2d 366, 373 (E.D.La.2004), holding that anti-retaliation provisions are absent from the sections of the LEDL that prohibit discrimination based on race, color, religion, sex and national origin. Judge Fallon reasoned in that case that "[i]n the new Employment Discrimination Law, the legislature included anti-retaliation provisions in the sections addressing age and sickle-cell trait discrimination. Had the

legislature intended to include parallel provisions in the other sections, they would have done so." *Smith v. Parish of Washington*, 318 F. Supp. 2d 366, 373 (E.D. La. 2004).

Subsequent to that decision, the legislature amended La. R.S. 51:2256 to include the LEDL, effectively overruling the reasoning of *Smith.* The amendment of La. R.S. 51:2256 creates a cause of action for retaliation in the case of employees alleging discrimination based on a disability, race, color, religion, sex, national origin, or pregnancy, childbirth and related medical conditions. La. R.S. 51:2256. As a complaint of retaliation was included in Plaintiff's original EEOC Charge, Plaintiff, under this new law, would have a valid and viable claim under the LEDL for retaliation.

However, this amendment did not become effective until August 1, 2014. La. R.S. 51:2256. No mention of intent to apply this amendment retroactively was made by the legislature. See Acts 2014, No. 756, Section 1. Because Plaintiff filed both her EEOC Charge on April 21, 2013 and suit on September 24, 2013, before the amendment of La. R.S. 51:2256, Plaintiff does not have a valid claim for retaliation under the LEDL.

## V. Remaining Claims

Plaintiff has two remaining claims: one for harassment and one for sexual discrimination, both brought under Title VII, 42 U.S.C. § 2000(e), et. seq., and Louisiana Employment Discrimination Law. Plaintiff will be allowed to proceed with these claims.

## VI. Conclusion

For all of the reasons set forth herein,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's Motion for Partial Dismissal is GRANTED.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's claims for wrongful termination and retaliation be and hereby are dismissed without prejudice.[1]

Signed in Baton Rouge, Louisiana, on <u>March 20, 2015</u>.

**_____
JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[1] "Louisiana state and federal courts applying Louisiana law have held the filing of an EEOC charge of discrimination satisfies the notice requirement [of § 23:303(c)], but limits the state claim to the alleged discrimination detailed in the EEOC charge…." *Galarza v. Ochsner Health Systems, Inc.*, 2014 WL 1431708 (W.D. La. 2014), citing *Johnson v. Hospital Corp. of America*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011). Here, the Court has held that Plaintiff failed to exhaust her claims for wrongful termination and retaliation because her EEOC complaint failed to contain factual statements supporting these claims and that holding applies with equal force to her corresponding claims brought under the LEDL. However, as the court in *Galarza* and *Johnson* noted, Louisiana and federal courts interpreting § 23:303 have dismissed procedurally barred claims with and without prejudice. *Galarza*, 2014 WL 1431708 at fn. 6; *Johnson*, 767 F. Supp. 2d at 701. Since neither party has briefed whether this claim should be dismissed with our without prejudice and out of an abundance of caution, the Court will follow the *Galarza* and *Johnson* courts' examples, and dismiss these state law claims without prejudice.